IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SHAMARCUS HUNT,

    Petitioner,

v.     No. 1:19-cv-01299-JDB-jay
    Re: 1:10-cr-10066-JDB-1

UNITED STATES OF AMERICA,

    Respondent.

ORDER DISMISSING AMENDED PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner,[1] Shamarcus Hunt, has filed an amended motion to vacate, set aside, or correct his sentence (the "Amended Petition") pursuant to 28 U.S.C. § 2255. (Docket Entry ("D.E.") 6.)[2] For the following reasons, the Amended Petition is DISMISSED.

BACKGROUND

In August 2010, a federal grand jury sitting in the Western District of Tennessee charged Hunt with possession of crack cocaine with intent to distribute (Count 1) and possession of cocaine with intent to distribute (Count 2), both in violation of 21 U.S.C. § 841(a)(1). (*United States v. Hunt*, No. 1:10-cr-10066-JDB-1 (W.D. Tenn.) ("No. 1:10-cr-10066-JDB-1"), D.E. 2.) Assistant Federal Public Defender M. Dianne Smothers represented him throughout the criminal proceedings. (D.E. 17-2).

---

[1] The Court will refer to Hunt as "the Defendant" in its discussion of his criminal case.

[2] Record citations are to documents filed in the present matter, unless otherwise indicated.

On August 30, 2011, the Defendant filed, through counsel, a motion to suppress the drugs seized from his girlfriend's house. (No. 1:10-cr-10066-JDB-1, D.E. 36.) The Court denied the motion following an evidentiary hearing. (*Id.*, D.E. 48.)

On March 2, 2012, the Defendant pleaded guilty to Count 1 of the indictment pursuant to a written plea agreement with the Government. (*Id.*, D.E. 60, 61.) By the agreement, Hunt waived his right to appeal, except in narrow circumstances, and to bring collateral challenges to his sentence under § 2255, including claims that counsel rendered ineffective assistance. (*Id.*, D.E. 61 at PageID 335-36.) For its part, the Government agreed to dismiss the remaining count. (*Id.*, D.E. 61 at PageID 334.)

In anticipation of sentencing, the United States Probation Office prepared the presentence report (the "PSR"). The PSR recommended a base offense level of 18 under the United States Sentencing Commission *Guidelines Manual* (the "Guidelines" or "U.S.S.G."). (PSR at ¶ 13.) The PSR advised an offense level increase to 32 under the Guidelines' career offender provision because the offense to which the Defendant pleaded guilty was committed subsequent to his having sustained at least two felony convictions for a controlled substance offense. (*Id.* at ¶ 19 (citing U.S.S.G. § 4B1.1).) The career offender enhancement was based on a 2006 Tennessee conviction for possession of cocaine with intent to sell and a 2007 conviction for sale of cocaine over .5 grams.[3] Two points were deducted for his acceptance of responsibility. (*Id.* at ¶ 20.) Based upon

---

[3] It appears that the 2007 sale of cocaine conviction was merged for career offender purposes with a conviction for possession of cocaine with intent to sell. (*See* PSR at ¶ 37 (counting the two convictions as "one" career offender predicate)); *see also* U.S.S.G. § 4A1.2 (providing for the merging of prior convictions into a single offense under certain circumstances).

a total offense level of 30 and a criminal history category of VI, the Guideline imprisonment range was calculated to be 168-210 months. (*Id.* at ¶ 56.)

A sentencing hearing was held on June 28, 2012. (No. 1:10-cr-10066-JDB-1, D.E. 74, 90.) Counsel requested that the Court impose a below-Guidelines sentence of 96 months' incarceration to be run concurrently with the Defendant's state conviction. (*Id.*, D.E. 90 at PageID 412.) The undersigned agreed with the PSR that the Defendant qualified as a career offender and that his resulting Guidelines incarceration range was 168 to 210 months. (*Id.*, D.E. 90 at 421-23.) Upon consideration of the parties' arguments, the advisory range, and the sentencing factors set forth in 18 U.S.C. § 3553(a), the undersigned imposed a bottom-of-the-Guidelines sentence of 168 months' incarceration and three years of supervised release. (*Id.*, D.E. 90 at PageID 426-27.) The undersigned also determined that the federal sentence should run concurrently with the state sentence. (*Id.*, D.E. 90 at PageID 427.) Judgment was entered the same day, but it inadvertently omitted the concurrency language. (*Id.*, D.E. 75 at PageID 360.) Hunt did not take a direct appeal. On January 13, 2018, the Court entered an amended judgment clarifying that the Defendant's sentence was to be served concurrently with his state sentence. (*Id.*, D.E. 88 at PageID 395.)

DISCUSSION

Hunt submitted his original petition (the "Petition") to prison authorities for mailing on December 12, 2019.[4] (D.E. 1 at PageID 12.) On March 16, 2020, he filed the Amended Petition. Liberally construed, that pleading presents three claims.[5] Claim 1 asserts that counsel rendered

---

[4] Under the mailbox rule, a prisoner's pleading is deemed filed on the day the document is placed into the prison mail system. *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999).

[5] The Court has reorganized and renumbered the claims for ease of discussion.

3

ineffective assistance by negotiating and recommending a plea agreement containing a collateral-rights waiver. According to Petitioner, the "collateral waiver provision . . . created a non-voidable conflict of interest between [him] and his attorney." (D.E. 6 at PageID 33.) Claim 2 posits that counsel rendered ineffective assistance by negotiating a plea agreement that, through its appellate and collateral-rights waivers, forfeited Petitioner's right to challenge his career offender status under the reasoning set forth in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam).[6] (*Id.* at PageID 34.) Claim 3 alleges that Hunt's guilty plea was not "knowing and intelligent" due to counsel's ineffective assistance in negotiating and recommending a plea agreement with a collateral-rights waiver. (*Id.* at PageID 33.) Respondent, United States of America, filed a response on June 21, 2021, arguing that the claims should be dismissed as untimely and, alternatively, that they are without merit. (D.E. 17.) Petitioner did not file a reply, although allowed to do so. (*See* D.E. 15 at PageID 65.)

I. Legal Standards

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th

---

[6] Petitioner alleges in Claims 1 and 2 that the waivers in the plea agreement were "impediment[s]" "created" by the Government. (D.E. 6 at PageID 33, 34.) Despite this language, the claims are in the nature of ineffective assistance claims because they fault counsel for negotiating and recommending the plea deal containing those "impediments."

Cir. 2007) (internal quotation marks omitted).  "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.*  A petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable in a § 2255 proceeding. *See id.*  Such a claim is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 966.  To succeed on an ineffective-assistance claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that [the proceedings] cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at

5

694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair'" proceeding. *Id.* (quoting *Strickland*, 466 U.S. at 687).

II.   Timeliness

Respondent maintains that the Petition was filed after the limitations period expired and that the Amended Petition is therefore also untimely and must be dismissed. Hunt acknowledges that he filed the Petition after the limitations period expired but argues that he is nevertheless entitled to have his claims reviewed on the merits. (D.E. 6 at PageID 41.)

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28 U.S.C. §§ 2244(b) and 2255 to limit a defendant to his direct appeal and one collateral attack, filed within one year of the date his conviction became final. 28 U.S.C. § 2244 *et seq*. Paragraph (f) of 28 U.S.C. § 2255 provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>    (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Generally, under § 2255(f)(1), "a conviction becomes final for purposes of collateral attack at the conclusion of direct review." *United States v. Cottage*, 307 F.3d 494, 498 (6th Cir. 2002). For a defendant who does not take a direct appeal, the judgment of conviction becomes final upon the expiration of the time for him to seek direct review. *Sanchez-Castellano v. United States,* 358 F.3d 424, 426 (6th Cir. 2004). Under the Federal Rules of Appellate Procedure, a defendant in a criminal case normally has fourteen days from entry of judgment in which to appeal. *See* Fed. R. App. P. 4(b)(1)(A).

The one-year statute of limitations in 28 U.S.C. § 2255(f) is not a jurisdictional bar and is subject to equitable tolling under extraordinary circumstances. *Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012). Equitable tolling requires the petitioner to show that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* Additionally, a credible showing of actual innocence will allow a petitioner to overcome the statute of limitations, rather than provide him an excuse for the late filing. *Yousafzai v. United States*, No. 17-1071, 2017 WL 3185189, at *2 (6th Cir. June 7, 2017) (citing *Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005)).

Hunt did not appeal his conviction or sentence. Pursuant to § 2255(f)(1), his conviction became final on Friday July 13, 2012, which was fourteen days after entry of judgment on June 29, 2012. The § 2255 limitations period began to run on Monday July 16, 2012, which was the next business day, and expired one year later on Tuesday July 16, 2013. As previously observed,

Hunt did not submit the Petition to prison authorities for mailing until December 12, 2019. His claims are therefore untimely by over six years.[7]

Petitioner nevertheless contends that his collateral-rights waiver is a Government-created "impediment." (D.E. 6 at PageID 41.) Liberally construed, the argument is that the start of the limitations period was not triggered when Hunt's conviction became final, as specified under § 2255(f)(1), but rather on "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States [was] removed," as provided in § 2255(f)(2). 28 U.S.C. § 2255(f)(2). The argument is unavailing.

Section 2255(f)(2) is "an exception to [the] rule" that a prisoner must "[t]ypically . . . file his Section 2255 motion within one year of his conviction's becoming final." *Simmons v. United States*, 974 F.3d 791, 796 (6th Cir. 2020). Under subsection (f)(2)'s exception, "the one-year period can begin on a later date—when an unconstitutional impediment to filing the motion is removed—provided that 'the movant was prevented from making a motion by such governmental action[.]'" *Id.* (quoting 28 U.S.C. § 2255(f)(2)). In *Simmons*, the Sixth Circuit announced that in order "to invoke Section 2255(f)(2), it is the prisoner's responsibility to allege (1) the existence of

---

[7] The amended judgment in Hunt's criminal case did not reset the limitations period. That is because the document was entered in order to correct a clerical mistake in the original judgment that had caused the record to "[in]accurately reflect the court's actions" at sentencing. *Crangle v. Kelly*, 838 F.3d 673, 680 (6th Cir. 2016) (an amended judgment that "merely corrected a record" was not a new sentence for purposes of the statute of limitations); *see also Spann v. Eppinger*, No. 19-3048, 2019 WL 3206699, at *2 (6th Cir. May 15, 2019) (unpublished) (amended judgment adding language "inadvertently omitted from the original judgment entry" did not reset limitations period).
    But even assuming the limitations period commenced fourteen days after the amended judgment was entered on January 31, 2018, it would have expired on Monday February 17, 2019. The Petition, which was filed on December 12, 2019, would therefore have been late under that scenario as well.

an impediment to his making a motion, (2) governmental action in violation of the Constitution or laws of the United States that created the impediment, and (3) that the impediment prevented the prisoner from filing his motion." *Id.* at 796-97 (citing *Krause v. Thaler*, 637 F.3d 558, 560–61 (5th Cir. 2011)).

Hunt does not meet *Simmons*' test. For one thing, his collateral-rights waiver was not an impediment created by the Government in violation of the Constitution or laws of the United States. Rather, such waivers are not unconstitutional and are enforceable when agreed to knowingly and voluntarily. *United States v. Fleming,* 239 F.3d 761, 763–64 (6th Cir. 2001). As will be discussed *infra*, Hunt entered into the plea agreement freely and voluntarily. What is more, Petitioner has not alleged how the waiver prevented him from timely filing the Petition. He therefore has not established that § 2255(f)(2) applies.

The inmate also contends that the Court should excuse the late filing because he is entitled to equitable tolling. (D.E. 6 at PageID 41.) He argues, essentially, that the meritorious nature of his claims should trump the limitations bar. The mere fact, however, that a petitioner might be able to prevail on the merits of his claim is not a ground for tolling. *See e.g.*, *Oliver v. Booker*, No. 06-CV-14211, 2008 WL 373906, at *7 (E.D. Mich. Feb. 12, 2008) ("[N]either the importance nor the merit of petitioner's constitutional claims provides a basis for equitably tolling the limitations period.") (citing *Rouse v. Lee,* 339 F.3d 238, 251-52 (4th Cir. 2003) (en banc)); *see also Padgett v. Litteral*, No. CV 17-33-DLB-EBA, 2018 WL 4001247, at *5 (E.D. Ky. Aug. 21, 2018) ("[E]ven were [the] claim meritorious, it is nonetheless subject to a one-year statute of

9

limitations; without more, equitable tolling is inappropriate."). Equitable tolling therefore does not save Hunt's late filing.[8]

In sum, the Petition--and by logical extension the Amended Petition--was not timely filed. Because Hunt has not presented any valid reason why the Court should excuse the late filing, the Amended Petition must be dismissed. Nevertheless, the Court has reviewed the substance of the claims and finds them to be without merit, as discussed immediately below. Therefore, even if the claims were timely, they would be denied.

III.    Claim 1

Petitioner asserts that counsel rendered ineffective assistance by negotiating and recommending a plea agreement that contained a collateral-rights waiver. He insists that, in so doing, counsel labored under a "non-voidable conflict of interest." (D.E. 6 at PageID 33.) The claim is not well-pleaded.

Although courts are to liberally construe pro se pleadings, where the "claims are stated in the form of conclusions without any allegations of fact in support thereof," a § 2255 petition is "legally insufficient to sustain review." *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974). Accordingly, a petitioner who presents "[m]erely conclusory allegations of ineffective assistance" fails "to state a constitutional claim." *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012).

---

[8] Petitioner does not seek to overcome the limitations bar on the ground that he is actually innocent of the crime to which he pleaded guilty.

In the present matter, Petitioner does not identify the nature of the alleged conflict of interest, or otherwise present supporting facts to support the general allegation. Because Claim 1 is wholly conclusory, is it subject to dismissal on the alternative ground that it is not well-pleaded.[9]

IV.     Claim 2

Petitioner asserts that counsel was ineffective for negotiating and recommending a plea agreement containing waivers which precluded him from taking a direct appeal to challenge his career offender status under *Havis* or to raise such a claim in a § 2255 petition. (D.E. 6 at PageID 34.) The Court understands Hunt to be arguing that the Tennessee offense of selling a controlled substance, on which his two career offender predicates are based, encompasses the attempt version of that offense and thus cannot qualify him as a career offender after *Havis*. Although he posits that prior to *Havis* he "was . . . foreclosed by circuit precedent from challenging his career offender status . . . i.e., USA v. Evans," he nevertheless believes that counsel should have anticipated *Havis*, which "abrogated" *Evans*. (*Id.*) The position is not well taken.

The Tennessee drug statute under which Petitioner was previously convicted provides in relevant part that

    (a) It is an offense for a defendant to knowingly:
        (1) Manufacture a controlled substance;
        (2) Deliver a controlled substance;
        (3) Sell a controlled substance; or

---

[9] It may be that Petitioner means to suggest that his counsel labored under a conflict of interest by advising him to prospectively waive his right to bring claims in a § 2255 proceeding that challenge the effectiveness of counsel's representation. Such an argument, however, is unavailing because Petitioner cannot prove prejudice. *See generally Lordi v. Ishee*, 384 F.3d 189, 193 (6th Cir. 2004) (except in cases where an actual conflict arises from concurrent representation, the petitioner must establish *Strickland* prejudice). Specifically, the Government in the present matter has not asserted the collateral-rights waiver as an affirmative defense to Petitioner's claims. Therefore, the waiver is without consequence in this § 2255 proceeding.

11

>    (4) Possess a controlled substance with intent to manufacture, deliver or sell the controlled substance.

Tenn. Code Ann. § 39-17-417(a)(1)-(4).  "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship[.]"  Tenn. Code. Ann. § 39-17-402(6).

>    The Guidelines define "controlled substance offense" as
>
>    an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

To determine if a conviction constitutes a controlled substance offense, a court must "apply a 'categorical' approach," which focuses on the statute under which the petitioner was convicted, rather than the petitioner's conduct.  *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)).  If the statute is "divisible," meaning it describes multiple offenses, the court may "employ the 'modified categorical approach.'"  *United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017) (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)).  That approach permits the examination of "a limited class of documents" from the defendant's prior criminal case in order "to determine which alternative formed the basis of the defendant's . . . conviction."  *Id.* (quoting *Descamps*, 570 U.S. at 257).  The Supreme Court in *United States v. Mathis*, 579 U.S. 500 (2016), clarified that a statute is divisible if it lists alternative elements, not alternative means of satisfying one or more elements.  *Mathis*, 579 U.S.

at 505.  If the statute lists alternative means, then it is "indivisible," and resort to the limited class of documents is prohibited.  *Id.* at 509.

Under either approach, the "second step" in a court's analysis is to "determine whether the offense, as described either by the entirety of an indivisible statute or by the relevant alternative of a divisible statute, matches §4B1.2(b)'s definition of a 'controlled substance offense.'"  *United States v. Pittman*, 736 F. App'x 551, 554 (6th Cir. 2018).  If the elements do not match, the prior conviction cannot be counted toward the defendant's career offender status.  *Id.* at 555.

In November 2012, the Sixth Circuit in *United States v. Evans*, 699 F.3d 858 (6th Cir. 2012), held that offering to sell a controlled substance is a controlled substance offense under the Guidelines.  *Evans*, 699 F.3d at 866-68.  The court relied on the Sentencing Commission's commentary, which stated that the definition of a controlled substance offense included attempt crimes.  *Id.* at 866.  Seven years later in *Havis*, the en banc Sixth Circuit "decided that [the defendant's] Tennessee conviction for delivery of a controlled substance" under Tenn. Code Ann. § 39-17-417(a)(2), "was *not* a controlled-substance offense under the guidelines."  *United States v. Garth*, 965 F.3d 493, 497 (6th Cir. 2020) (citing *Havis*, 927 F.3d at 387).  The court "reached that result because 'the parties agree[d] that the least culpable conduct' Tennessee delivery proscribes is 'attempted delivery,' but the guidelines' definition covers only the controlled-substance offenses listed in the definition (which are all completed crimes), not the attempted versions of those offenses listed in the Sentencing Commission's commentary."  *Id.* (alteration in original) (quoting *Havis*, 927 F.3d at 385, 387).  The en banc court in *Havis* made clear that it was overruling *Evans*.  *Havis*, 927 F.3d at 384.

13

The Sixth Circuit has "repeatedly held that counsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing decisions." *Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018) (citing *Thompson v. Warden, Belmont Corr. Inst.* 598 F.3d 281, 288 (6th Cir. 2010) (collecting cases); *United States v. Freeman*, 679 F. App'x 450, 453 (6th Cir. 2017)). A court must "assess counsel's performance based on counsel's perspective at the time, considering all the circumstances, rather than in the harsh light of hindsight." *Snider*, 908 F.3d at 192 (6th Cir. 2018) (internal quotation marks and citations omitted).

Hunt cannot demonstrate that counsel performed deficiently. His criminal case began with the filing of the indictment in August 2010 and concluded with imposition of the sentence and entry of judgment in June 2012. Through the entirety of his criminal case, Sixth Circuit precedent held that the Tennessee drug statute, Tenn. Code Ann. § 39-17-417, categorically described controlled substance offenses. *See e.g., United States v. Hughley,* 192 F. App'x 447, 455 (6th Cir. 2006); *United States v. Holloway*, 142 F.3d 437, 1998 WL 109987 at * 1–2 (6th Cir. 1998) (per curiam) (unpublished). What is more, just five months after entry of judgment, the Sixth Circuit in *Evans* held that an offense of offering or attempting to sell drugs qualified as a career offender predicate. As discussed *supra*, *Evans* remained controlling precedent until *Havis* was decided seven years later. The ruling in *Havis* was therefore not clearly foreshadowed at the time of Petitioner's sentencing or for many years thereafter. Given this legal landscape, it was not outside the bounds of reasonable professional assistance for counsel to advise Petitioner that his Tennessee convictions qualified him as a career offender.

14

Petitioner also cannot establish that he was prejudiced by counsel's conduct. For one thing, counsel's advice was dictated by binding Sixth Circuit precedent at the time. Therefore, a direct appeal in 2012 raising the career offender argument would have failed. A *Havis* claim on collateral review also would not have afforded Petitioner any relief as such a claim is non-cognizable in § 2255 proceedings. *See Bullard v. United States*, 937 F.3d 654, 661 (6th Cir. 2019) (a claim under *Havis* is "best left for direct review"). Claim 2 is therefore devoid of merit.

V.      Claim 3

Petitioner asserts in Claim 3 that his guilty plea was involuntary and unknowing because it was the product of counsel's ineffective assistance in negotiating and recommending a plea agreement containing appellate and collateral-rights waivers. The Government argues that the claim is undermined by the record in Hunt's criminal case.

"A guilty plea is valid only if the defendant knowingly, intelligently and voluntarily waives the many constitutional rights associated with a criminal trial ... and has 'sufficient awareness of the relevant circumstances and likely consequences' of the plea." *United States v. Taylor*, 281 F. App'x 467, 469 (6th Cir. 2008) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), and quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 618-19 (1998)).

*Strickland*'s two-part test applies to a claim that counsel was ineffective at the plea stage of the criminal proceedings. *Rodriguez-Penton v. United States*, 905 F.3d 481, 486 (6th Cir. 2018). "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon

15

the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *Mann v. Richardson*, 397 U.S. 759, 771 (1970)). A petitioner demonstrates prejudice in the plea context by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. Because "[t]he standard for prejudice in this context is objective," the petitioner must show "that a decision to reject the plea bargain would have been rational under the circumstances." *Moore v. United States*, 676 F. App'x 383, 386 (6th Cir. 2017) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

Hunt cannot establish that his guilty plea was unknowing and involuntary due to counsel's conduct. More to the point, the claim is unsupportable for the obvious reason that the Court has determined that counsel was not ineffective at the plea stage.

The record from the change of plea hearing also belies Petitioner's allegation that the plea was unknowing and involuntary. During that proceeding, the undersigned conducted the Rule 11 colloquy, *see* Fed. R. Crim. P. 11, making certain that the Defendant understood the charge to which he was pleading guilty, the minimum and maximum penalties, the rights he was giving up by pleading guilty, and the basics of sentencing. (D.E. 17-1 at PageID 83-88, 91-95.) The prosecutor summarized the plea agreement and provided the factual basis for the plea. (*Id.* at PageID 88-91, 95-97.) Hunt confirmed under oath that he entered into the plea agreement freely and voluntarily following review of the document with his attorney and that he was in fact guilty of the crime to which he was pleading guilty. (*Id.* at PageID 88, 98.) Based on this record, the undersigned found that the plea was entered knowingly and voluntarily. (*Id.* at PageID 98.)

16

Petitioner's affirmations under oath at the hearing and the Court's finding of voluntariness together "constitute a formidable barrier" to § 2255 relief, which Hunt's general allegation of an involuntary plea does not surmount. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Craig v. United States*, No. 2:04-cr-78, 2011 WL 864359, at *6 (E.D. Tenn. Mar. 10, 2011) ("[T]he transcript of the change of plea hearing confirms the knowing and voluntary nature of the waiver."), *aff'd* 513 F. App'x 487 (6th Cir. 2013).

Finally, even assuming counsel performed deficiently, Petitioner has failed to establish that he would have proceeded to trial had counsel advised him differently. In other words, he cannot demonstrate that a reasonable defendant in his position would have rejected the plea offer. As counsel explained in her affidavit, Hunt was facing two controlled substance charges and the prospect that the Government would file a notice for enhanced sentencing under 21 U.S.C. § 851 if he "enter[ed] an 'open plea' with no appellate waiver" or proceeded to trial and was convicted. (D.E. 17-2 at PageID 103-104.) Counsel advised her client that if the Government filed an 851 notice it would not be withdrawn, that the notice "would increase the potential statutory penalty on each charge to not more than 30 years," and that the sentencing range under the "career offender chapter" would also increase from 168-210 months to 210-262 months. (*Id.* at PageID 104.) Hunt does not dispute counsel's averments. Claim 2 is therefore patently without merit.

For these reasons, the Amended Petition is DISMISSED as untimely and, alternatively, as lacking merit. Judgment shall be entered for Respondent.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA

may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to dismiss the Amended Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is therefore DENIED.[10]

IT IS SO ORDERED this 10th day of January 2023.

                                            s/ J. DANIEL BREEN
                                            UNITED STATES DISTRICT JUDGE

---

[10] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.